UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                 :

**DAQI CUI**,
                                 :

                      Plaintiff,      : **MEMORANDUM DECISION AND ORDER**

          – against –                   : 23-CV-5683 (AMD) (VMS)

**PLANET GREEN HOLDINGS, INC.**,
                                 :

                      Defendant.
                                 :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       The plaintiff brought this diversity action, asserting breach of contract and unjust enrichment claims, against the defendant, his former employer. The plaintiff alleges that the defendant did not pay him wages and benefits as required by their employment agreement, repay loans the plaintiff made to the defendant, or reimburse the plaintiff for his employment-related expenditures. The plaintiff seeks unpaid wages, reasonable attorney's fees, prejudgment interest, and liquidated damages. The defendant moves to dismiss the complaint. For the reasons that follow, the Court grants the motion, but gives the plaintiff leave to file an amended complaint.

## BACKGROUND

### I. Factual Background

       In June 2019, the plaintiff joined Planet Green as Chief Operating Officer at an annual base salary of $96,000. (ECF No. 12 ¶ 3; *see also* ECF No. 1-2 ¶¶ 3, 4(a)-(b) (Ex. A, Employment Agreement).) Planet Green's Board of Directors appointed him Chief Operating Officer on June 18, 2019. (ECF No. 1-3 at 26 (Ex. B, Form 10-K).) The parties also entered into an employment agreement, which became effective on June 18, 2019. (ECF No. 1-2 at 2.)

Pursuant to the agreement, the plaintiff would "serve as Chief Operating Officer" and fulfill the "duties and responsibilities" of COO, "devot[ing] his full business time, attention, skill and efforts to the business and affairs of the Company." (*Id.* ¶ 3.)[1]

The employment agreement included provisions for terminating the plaintiff's employment. Sections 5(a) and (b) provided that the employment agreement could be terminated "[B]y [the] Company for Cause" or "[B]y [the] Executive for Good Reason," respectively. (*Id.* ¶¶ 5(a), 5(b).)

Section 5(c) described a third termination scenario:

> This Agreement shall terminate immediately upon the death of Executive or the Company's determination of Executive's 'Disability' . . . or (ii) if the Company does not maintain any such disability policy on the date of determination, the inability of the Executive to work for a period of six (6) full calendar months during any nine (9) consecutive calendar month period due to illness or injury of a physical or mental nature, supported by the completion . . . of a medical certification form outlining the disability and treatment, if at the end of such disability period, there is no reasonable probability of Executive promptly resuming full-time service pursuant to the terms of this Agreement.

(*Id.* ¶ 5(c).)

Section 6(a) of the employment agreement provided that the defendant would give the plaintiff a "written Notice of Termination" if the defendant terminated the plaintiff's employment. If the plaintiff terminated his employment, he had to give the notice to the defendant. (*Id.* ¶ 6(a).) The agreement also included an integration clause, which stated that the agreement "constitutes the entire agreement between the parties pertaining to the subject matter hereof, and fully supersedes any and all prior agreements between the parties" and that "no

---

[1] The employment agreement referred to the plaintiff as "Executive." (*See, e.g.*, ECF No. 1-2 at 2 ("WHEREAS, the Company desires to employ the Executive and the Executive desired to be employed by the Company on the terms and conditions herein provided.").)

amendment or modification . . . shall be valid unless" it is written and signed by the parties. (*Id.* ¶ 19.)[2]

Section 4(c), which addressed business-related expenses, provided:

> The Company shall reimburse the Executive for all reasonable out-of-pocket travel or other business expenses actually incurred or paid by the Executive in connection with the performance of his duties and obligations under this Agreement, subject to the Executive's presentation of itemized vouchers, receipts and documentation and consistent with the reimbursement policies and procedures as the Company may, from time to time, establish for senior officers.

(*Id.* ¶ 4(c).)

The plaintiff alleges that he loaned the defendant $160,000 in 2019 and spent "a total of $116,000 in personal fund[s] . . . for the [defendant] under an understanding of reimbursement." (ECF No. 12 ¶ 12.) Although Planet Green officers "acknowledged these loans," the loans have not been repaid, nor has the plaintiff been reimbursed. (*Id.* ¶ 13.)

In 2020, the plaintiff was injured in a car accident while he was traveling for work.[3] On October 21, 2020, after the car accident, he resigned as COO "for health reasons." (*Id.* ¶ 4.) The defendant disclosed the plaintiff's resignation on its Form 10-K, which it filed with the U.S. Securities and Exchange Commission in March 2021 for the fiscal year ending December 31, 2020. (ECF No. 1-3 at 26 ("Mr. Cui resigned as Chief Operating Officer on October 21, 2020, due to his personal health reasons and continued to be employed by the Company.").)

Although the plaintiff resigned as COO, he continued to work for the defendant, "performing substantially similar duties for the same compensation." (ECF No. 12 ¶ 4.) The

---

[2] The employment agreement provides that New York law governs the "validity, interpretation, construction and performance" of the agreement. (ECF No. 1-2 ¶ 21.)

[3] The complaint does not include the date of the car accident but says that it occurred before the plaintiff resigned as COO. (ECF No. 12 ¶ 4.)

3

defendant did not complain about his job performance during his employment. (*Id.* ¶ 6.) In November 2021, the defendant stopped paying the plaintiff salary and benefits, and stopped giving him written wage statements. (*Id.* ¶ 7.) The plaintiff notified the defendant that he was owed unpaid wages but continued working for the defendant. (*Id.* ¶ 8.) As of June 2023, the plaintiff had not received wages and benefits. (*Id.*)[4]

## II. Procedural History

On July 27, 2023, the plaintiff brought this action, claiming breach of contract and unjust enrichment, and seeking $333,145.05 in unpaid salary and unpaid benefits, $276,000 in unpaid loans to the defendant, interest, costs, and reasonable attorney's fees. (ECF No. 1.) The defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. (ECF No. 14.)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

---

[4] The plaintiff does not state in the complaint whether he still works for the defendant, or, if he no longer works for the defendant, when he stopped working.

In his second amended complaint, the plaintiff cites his employment agreement and a Form 10-K that the defendant filed; he attached both to his original complaint, but not to his second amended complaint. (ECF No. 12 ¶¶ 3, 5; *see also* ECF No. 1-2; ECF No. 1-3.)[5] Because the plaintiff incorporates these documents by reference into the second amended complaint, the Court considers them in deciding the motion to dismiss. *See Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007) (courts considering motions to dismiss may look to extraneous documents incorporated by reference into the complaint) (citation omitted); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (courts considering motions to dismiss are not necessarily limited to the face of the complaint when "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls").[6] Additionally, "it is appropriate for a court to consider the affirmative defense of statute of frauds on a motion to dismiss." *Akerson Advert. & Mktg., Inc. v. St. John & Partners Advert. & Pub. Rels., Inc.*, 89 F. Supp. 3d 341, 349 (N.D.N.Y. 2015) (citation omitted).

## DISCUSSION

In his complaint, the plaintiff cites two contracts: his employment agreement and an implied contract under which he made loans to the defendant. The defendant also cites the employment agreement and argues that it has no obligation to pay the plaintiff the salary and

---

[5] All references to the complaint are to the second amended complaint (ECF No. 12) unless otherwise stated.

[6] The Court does not consider the affidavit that the defendant attached to its motion to dismiss, except to the extent it quotes the complaint or documents that the complaint incorporates by reference. *See Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("[I]n deciding whether to dismiss a complaint under Rule 12(b)(6), [the court] is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)) (internal quotation marks omitted)).

benefits that he seeks because he resigned. (ECF No. 14-2 ¶ 20.) In addition, the defendant contends that the plaintiff's allegations about loans he made to the defendant "under an understanding of reimbursement" are "bare assertions" that do not state a claim and are in any event barred by the statute of frauds. (*Id.* ¶ 18.) As explained below, the Court concludes that the plaintiff has not sufficiently alleged a breach of contract claim. Furthermore, the plaintiff's unjust enrichment claim is dismissed as duplicative of his breach of contract claim.

I. **Breach of Contract Claim**

The plaintiff alleges that the defendants breached the employment agreement by withholding his salary and benefits for the period between November 2021 and June 2023. (ECF No. 12 ¶¶ 7–9, 14.)[7] "To state a claim for breach of contract under New York law, [a] complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (citation omitted). "At the motion to dismiss stage, the court resolves any contractual ambiguities in favor of the plaintiff, and if the plaintiff has an arguable claim under the contract, then the claim should not be dismissed." *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 714 (S.D.N.Y. 2022).

Under New York law, a court interpreting a contract is "to give effect to the intent of the parties as revealed by the language they chose to use." *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000); *see also Wong v. New York Times Co.*, 297 A.D.2d 544, 547 (1st Dep't 2002) ("A contract should be construed in accordance with the parties' purpose [and] a fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the

---

[7] The plaintiff does not allege that he and the defendant entered into a separate employment agreement under which the plaintiff agreed to continue working for the defendant in a capacity other than that of COO.

agreement."). "In interpreting a contract, words and terms are given their plain and ordinary meaning in the absence of contractual ambiguity." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010).

A contract is ambiguous if "more than one meaning may reasonably be ascribed to the language used." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a 'reasonable' interpretation." *Law Debenture*, 595 F.3d at 467 (quoting *Hunt Ltd. v. Lifschultz Fast Freight*, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989)) (internal quotation marks and citations omitted). Therefore, "the court should not find the contract ambiguous where the interpretation urged by one party would 'strain [] the contract language beyond its reasonable and ordinary meaning.'" *Id.* (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (1957)).

### a. Wages and Benefits

The defendant contends that it was not required to pay the plaintiff wages and benefits under the terms of the employment agreement. The defendant says that the plaintiff was terminated pursuant to Section 5(c) of the employment agreement, nine months after the plaintiff resigned on October 21, 2020 for health reasons. (ECF No. 14-2 ¶ 13.) The plaintiff maintains that he is entitled to salary and benefits for the period between November 2021 and June 2023 because he worked for the defendant during this time. (ECF No. 12 ¶¶ 7–8.) He also says that there was no written notice of termination. (ECF No. 16 at 2.)

Section 5 of the employment agreement contains three termination scenarios: (1) termination by the company for good cause (ECF No. 1-2 ¶ 5(a)), (2) termination by the executive for good reason (*id.* ¶ 5(b)), and (3) termination upon the death or disability of the executive (*id.* ¶ 5(c)). An executive can be terminated for "Good Cause" if the executive has,

among other things, engaged in "gross and willful misconduct," "breach[ed] . . . any material provision of th[e] Agreement," or engaged in "fraud, embezzlement, misrepresentation or an act of dishonesty in connection with his duties." (*Id.* ¶ 5(a).) The executive can terminate his employment for "Good Reason" if the company has "breach[ed] . . . any material provision of this Agreement." (*Id.* ¶ 5(b).) Finally, an executive's employment can be terminated "immediately upon the death of Executive or the Company's determination of Executive's Disability." (*Id.* ¶ 5(c).) Section (5)(c) also requires that the "Executive's attending physician or a doctor for the Company or its insurer" complete a medical certification form which "outlin[es] the disability and treatment." (*Id.*)

Section 6(a) describes the circumstances under which written notice of termination is required. "Any termination of Executive's employment by the Company shall be communicated by written Notice of Termination to Executive and any termination by the Executive of his employment shall be communicated by written Notice of Termination to the Company." (*Id.* ¶ 6(a).)

The plaintiff claims that none of the three termination clauses applies because even though he resigned as COO, he did not terminate his employment. (ECF No. 12 ¶ 11 ("Plaintiff was never in fact terminated.").) First, he states that the employment agreement provides that he "could not be terminated except for good cause (restrictively defined in the Agreement)" (*id.* ¶ 10), and "[t]here was never good cause for termination" (*id.* ¶ 11). Second, he maintains that even if any of the termination clauses did apply, he "was never in fact terminated" because "he never received any notice" of termination. (*Id.*) The defendant maintains that the plaintiff "resigned due to 'health' reasons" and was terminated because of "disability" under Section 5(c),

8

which, unlike the other two termination clauses, does not require that there be cause or notice. (ECF No. 14-2 ¶ 6.)

The parties agree that a termination under Sections 5(a) and (b) requires a written notice. Section 5(a) applies when the defendant commences a termination. (ECF No. 1-2 ¶ 5(a) ("The Company may terminate this Agreement for 'Cause' . . . .").) Section 5(b) applies when the plaintiff terminates employment. (*Id.* ¶ 5(b) ("The Executive may terminate this Agreement for 'Good Reason' . . . .").)

The parties dispute whether a Section 5(c) termination requires a written notice of termination; the plaintiff says that it does (ECF No. 16 at 2), and the defendant says that it does not (ECF No. 14-2 ¶ 6). A termination under Section 5(c) occurs "immediately" in two situations: death or disability of the executive. By its terms, termination under this section is not commenced "by the Company" or "by the Executive." Accordingly, the requirement of written notice of termination does not apply to this section. *See Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) ("Contracts must be read as a whole, and if possible, courts must interpret them to effect the general purpose of the contract." (citing *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003))).

According to the plaintiff, he was not terminated pursuant to Section 5(c) because this section applies only if the executive has "the inability . . . to work for a period of six (6) full calendar months during any nine (9) consecutive calendar month period due to illness or injury," and "there is no reasonable probability of the Executive promptly resuming full-time service pursuant to the terms of this Agreement." (ECF No. 16 at 3; *see also* ECF No. 1-2 ¶ 5(c).) The plaintiff maintains that he was still working, just not as the COO.

But the plaintiff was hired to be the Chief Operating Officer and the employment agreement applied to that position only. The Board of Directors appointed the plaintiff to serve as Chief Operating Officer on June 18, 2019 (ECF No. 1-3 at 26), the same day his employment agreement became effective (ECF No. 1-2 at 2). Section 3 of his employment agreement, which is titled "Positions and Duties," provides that the plaintiff "shall serve as Chief Operating Officer" and fulfill the "duties and responsibilities" of COO (*id.* ¶ 3), "devot[ing] his full business time, attention, skill and efforts to the business and affairs of the Company" (*id.*). The employment agreement also refers to the plaintiff as "Executive." (*See, e.g.*, *id.* at 2 ("WHEREAS, the Company desires to employ the Executive and the Executive desired to be employed by the Company on the terms and conditions herein provided.").)[8] The plaintiff signed the employment agreement as an "Executive." (*Id.* at 12.)

Thus, a reasonable construction of "inability . . . to work" (*id.* ¶ 5) is that the plaintiff cannot "serve as Chief Operating Officer of the Company" and fulfill the "duties and responsibilities" (*id.* ¶ 3) of that position. *See Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) ("New York law . . . disfavors interpretations that render contract provisions meaningless or superfluous."); *Walker v. Thompson*, 404 F. Supp. 3d 819, 825 (S.D.N.Y. 2019) ("[A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992))). The agreement also provides that termination under this clause occurs when "there is no reasonable probability of the Executive promptly resuming full-time service pursuant to the terms of this Agreement." (*Id.* ¶ 5(c).) The plaintiff resigned,

---

[8] As reflected in the defendant's March 2021 Form 10-K, the COO was an executive officer. (ECF No. 1-3 at 26.)

according to the complaint, because of the injuries he sustained in the accident, injuries that kept him from "promptly resuming full-time service pursuant to the terms of this Agreement." (*Id.*)

The plaintiff alleges that he resigned as COO because of his injuries, but says that the plaintiff continued "performing substantially similar duties for the same compensation." (ECF No. 12 ¶ 4.) The plaintiff also points to the Form 10-K filed in March 2021, in which the defendant reported that "Mr. Cui resigned as Chief Operating Officer on October 21, 2020 due to his personal health reason and he continued to be employed by the Company." (ECF No. 1-3 at 26.) The plaintiff does not allege, however, that he resumed "serv[ice] as Chief Operating Officer" after he resigned as COO or that he "devote[d] his full business time, attention, skill and efforts to the business and affairs of the Company," as enumerated under Section 3. (ECF No. 1-2 ¶ 3.) Nor does he allege that a doctor or insurer completed a medical certification form on his behalf as Section 5(c) requires. Without this information, the Court cannot determine whether Section 5(c) applies or whether the plaintiff was terminated. *See Gangemi v. Arch Oncology, Inc.*, No. 22-CV-7961, 2023 WL 3687729, at *3 (S.D.N.Y. May 26, 2023) (finding that the plaintiff did not state a breach of contract claim because she did not allege in the complaint that she did not receive a general release of all claims, a condition precedent to her receiving severance from the defendant).

### b. Loans and Expenses

The plaintiff also asserts that he loaned the defendant $160,000 in 2019, that he spent "$116,000 in personal fund[s] for the company," and that the defendant breached an implied contract when it did not repay or reimburse the plaintiff for those expenditures. (ECF No. 12 ¶ 17.)

Under New York law,

> "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct."

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 582 (2d Cir. 2006) (citation omitted).

"An implied contract, like an express contract, requires 'consideration, mutual assent, legal capacity and legal subject matter.'" *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (citation omitted). "Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances." *Beth Israel*, 448 F.3d at 582 (citation omitted). A breach of implied contract also "requires a showing that there was a 'meeting of the minds.'" *Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*, No. 23-CV-2349, 2023 WL 7529768, at *4 (S.D.N.Y. Nov. 13, 2023).

The plaintiff has not pleaded sufficient facts to support a claim for breach of implied contract. He has not alleged any facts from which it can be reasonably inferred that there was a meeting of the minds. The plaintiff alleges an "understanding of reimbursement" (*id.* ¶ 12) but does not describe the circumstances under which the implied contract came into existence, or what the defendant did or said to establish that it promised the plaintiff anything or agreed to any terms. Accordingly, the plaintiff has "failed to allege the first element of a contract claim: an enforceable agreement to do what [the plaintiff] alleges [the defendant] failed to do." *Piuggi v. Good For You Productions LLC*, No. 23-CV-3665, 2024 WL 3274638, at *14 (S.D.N.Y. July 2, 2024) (citation omitted); *see also Yodice v. Touro Coll. & Univ. Sys.*, No. 21-CV-2026, 2021 WL

5140058, at *3 (S.D.N.Y. Nov. 4, 2021) ("Because the complaint fails to allege specific promises sufficient to form an implied contract, [the plaintiff's] breach of contract claims are dismissed.").[9]

To the extent the plaintiff asserts that the defendant breached the employment agreement by withholding repayment of the "$160,000 loan in 2019 and $116,000 in personal fund spent for the company" (*id.* ¶ 12), he does not allege which section of the agreement the defendant violated. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) ("To plead the[] elements [of a breach of contract claim], 'a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue.'" (citation omitted)). Nor does the plaintiff allege that the defendant violated Section 4(c), which provides, "The Company shall reimburse the Executive for all reasonable out-of-pocket travel or other business expenses . . . in connection with the performance of his duties and obligations under this Agreement, subject to the Executive's presentation of itemized vouchers, receipts and documentation . . . ." (ECF No. 14-2 ¶ 17.) Even if he had, he does not allege that he made the loans "in connection with the performance of his duties and obligations under this Agreement" or that he presented the defendant with "itemized vouchers, receipts and documentations." (ECF No. 1-2 ¶ 4(c).)[10]

---

[9] The defendant also argues that the plaintiff's loan claims are barred by the statute of frauds. Under New York's statute of frauds, contracts which "have absolutely no possibility in fact and law of full performance within one year[]" must be in writing. *Cohan v. Movtady*, 751 F. Supp. 2d 436, 442 (E.D.N.Y. 2010) (citing *D & N Boening v. Kirsch Beverages*, 63 N.Y.2d 449, 483 (1984)). Because the complaint does not plead sufficient facts about the purpose or nature of the loans, the Court does not consider the defendant's statute of frauds defense.

[10] The plaintiff also claims that he "stated quantity, when and for what purpose the loans were made, and even included receipts" in paragraph 19 of his complaint (ECF No. 16 at 4), but there is no paragraph 19 in the complaint, or any information about the date or purpose of the loans.

13

Accordingly, the plaintiff has not pleaded sufficient facts to support his breach of contract claim.

## II. Unjust Enrichment

The defendant also moves to dismiss the plaintiff's unjust enrichment claim. The plaintiff alleges that the defendant benefited from his services without paying him and that the defendant did not repay the loans he made to the defendant or reimburse him for work-related expenses. (ECF No. 12 ¶¶ 15, 18.) To establish unjust enrichment, the plaintiff must show "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020). "Under New York law, claims in quasi-contract such as unjust enrichment . . . are ordinarily precluded if a valid and enforceable written contract, even an implied contract, governs the relevant subject matter." *Tapinekis v. Pace Univ.*, No. 22-CV-1058, 2024 WL 2764146, at *2 (2d Cir. May 30, 2024) (quotation marks omitted). "[A] claim for unjust enrichment will not survive a motion to dismiss unless a plaintiff explains how the claim is not simply duplicative of its other claims." *AFP Mfg. Corp. v. AFP Imaging Corp.*, No. 17-CV-03292, 2018 WL 3329859, at *11 (S.D.N.Y. July 6, 2018) (citation omitted).

The unjust enrichment claim is duplicative of the plaintiff's breach of contract claim. The claim "relies on the same factual allegations and the same theory of liability" as the breach of contract claim, and is thus "plainly insufficient." *Hesse*, 463 F. Supp. 3d at 474 (citation omitted); *see also Scanni v. New York Life Ins. & Annuity Co.*, No. 21-CV-180, 2023 WL 2710921, at *8 (E.D.N.Y. Mar. 30, 2023) ("[A]lthough quasi-contract claims may be plead in the alternative where the plaintiff challenges the validity of the contract[,] [they] may not be plead in the alternative alongside a [breach of contract claim], even where the contract claim fails on the

merits." (internal citations and quotation marks omitted)); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." (internal quotation marks and citation omitted)); *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (explaining that courts "have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship"). Accordingly, the unjust enrichment claim is dismissed.

## CONCLUSION

For these reasons, the motion to dismiss is granted, and the complaint is dismissed. The plaintiff is granted leave to file an amended complaint within 30 days after the entry of this order. If the plaintiff does not file an amended complaint within the time allowed or show good cause for an extension to file the amended complaint, the Court will direct the Clerk of Court to enter judgment and close this case.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       July 29, 2024