UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
            :
**DAQI CUI**,
            :
                              Plaintiff,    :   **MEMORANDUM DECISION AND ORDER**

           – against –       :   23-CV-5683 (AMD) (VMS)
            :
**PLANET GREEN HOLDINGS, INC.**,
            :
                            Defendant.
            :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff brought this diversity action, asserting breach of contract and unjust enrichment claims, against the defendant, his former employer. The plaintiff alleges that the defendant did not pay him wages and benefits as required by either their employment agreement or an implied agreement, reimburse the plaintiff for his employment-related expenses, or repay loans the plaintiff made to the defendant. The plaintiff seeks unpaid salary, benefits, repayment of the loans plus interest, costs, and reasonable attorney's fees. The defendant moves to dismiss the fourth amended complaint.[1] For the reasons that follow, the Court denies the motion.

**BACKGROUND**

**I.    Factual Background**[2]

      In June 2019, the plaintiff joined the defendant as Chief Operating Officer at an annual base salary of $96,000. (ECF No. 29 ¶ 9; *see also* ECF No. 29-1 ¶¶ 3, 4(a)-(b) (Ex. A, Employment Agreement).) The parties entered into an employment agreement, effective June

---

[1] The Court dismissed the plaintiff's second amended complaint with leave to amend. (ECF No. 24.)

[2] The Court assumes familiarity with the facts of this case. (*Id.*)

18, 2019, which stated that the plaintiff would "serve as Chief Operating Officer," "have such duties and responsibilities commensurate with" the COO position, and "devote his full business time, attention, skill and efforts to the business and affairs of the Company." (ECF No. 29-1 ¶ 3.)

Section 2 of the employment agreement provided that after an initial one-year term beginning on June 18, 2019, the agreement "shall be automatically renewed" for additional one-year terms, "unless either party gives prior written notice of non-renewal to the other party" at least sixty days before the termination of the renewal term. (*Id.* ¶ 2.) Under Section 4(b) of the agreement, which covered benefits, the plaintiff was "entitled to participate in all compensation and employee benefits plans . . . available to all employees of the Company." (*Id.* ¶ 4(b).) Section 4(c) of the agreement, which addressed business-related expenses, provided:

> The Company shall reimburse the Executive for all reasonable out-of-pocket travel or other business expenses actually incurred or paid by the Executive in connection with the performance of his duties and obligations under this Agreement, subject to the Executive's presentation of itemized vouchers, receipts and documentation and consistent with the reimbursement policies and procedures as the Company may, from time to time, establish for senior officers.

(*Id.* ¶ 4(c).)

Section 19 of the agreement included an integration clause providing that the agreement "constitutes the entire agreement between the parties pertaining to the subject matter hereof, and fully supersedes any and all prior agreements between the parties . . . respecting the Executive's employment" and that "no amendment or modification to this Agreement shall be valid unless set forth in writing and signed by each of the parties." (*Id.* ¶ 19.)[3]

---

[3] The employment agreement provides that New York law governs the "validity, interpretation, construction and performance" of the agreement. (ECF No. 29-1 ¶ 21.)

According to the plaintiff, he loaned the company "substantial sums of money." (*Id.* ¶ 22.) In June 2020, the Chief Technology Officer of Fast Approach, a company the defendant acquired, emailed the plaintiff confirming that Fast Approach borrowed $140,000 from the plaintiff, and that "Fast Approach promises to repay this principal amount." (ECF No. 29-4 at 2; *see also* ECF No. 29 ¶ 23.) The plaintiff claims that he had to make a personal loan because the defendant's shareholders could not afford the full purchase price. (ECF No. 29 ¶ 24.) In exchange, the defendant's Chairman and CEO promised to give the plaintiff 3.5 million shares, valued at approximately 10 million yuan. (*Id.*) The plaintiff alleges that that defendant has not given him the shares, and the loan has not been repaid. (*Id.*)

The plaintiff says that he paid certain operating expenses for the defendant, including: $40,000 to the defendant's attorney for merger and acquisition services on July 12, 2020; a $46,000 NYSE issuance fee on October 2, 2020; $15,000 to the defendant's Canadian branch on October 8, 2020; $20,000 for an attorney on October 30, 2020; $3,818.21 in Canadian legal fees in October 2020; $1,000 for Canadian employee wages in October 2020; and $20,000 to the defendant's Canadian branch on September 1, 2021. (*Id.* ¶ 25.) The plaintiff asserts that "paying such expenses and later being reimbursed" was one of his responsibilities as COO, in part because the defendant did not maintain an American bank account. (*Id.* ¶ 26.) The plaintiff says that the defendant reimbursed similar expenses, but did not reimburse the above expenses, even though the plaintiff sent the defendant invoices and itemized receipts. (*Id.* ¶¶ 26–27; *see also* ECF No. 29-6.)[4]

---

[4] In November 2021 the defendant confirmed the invoices for some of the above expenses. (ECF No. 29-5.)

3

In late October 2020, the plaintiff was injured in a car accident while he was traveling for work.  (ECF No. 29 ¶ 10.)  The plaintiff then "resigned the COO title for health reasons."  (*Id.*)  The defendant disclosed the plaintiff's resignation on its annual Form 10-K, which it filed with the U.S. Securities and Exchange Commission in March 2021 for the fiscal year ending December 31, 2020.  (*Id.* ¶ 11; *see also* ECF No. 29-2 at 26.)  The disclosure also stated that the plaintiff "continued to be employed by the Company."  (*Id.*)

Although the plaintiff resigned his "COO title," he continued to work for the defendant, "performing substantially similar duties for the same compensation."  (ECF No. 29 ¶ 10.)  He "continued devoting his full business time, attention, skill and efforts to the business and affairs of the Company," "remained the Company's only Executive located in the United States and speaking English," and "remained responsible for stock exchange and governmental filings."  (*Id.*)  The defendant did not complain about his job performance, "either before or after his change in title."  (*Id.* ¶ 12.)  The plaintiff alleges that the employment agreement "remained in force during this time."  (*Id.* ¶ 10.)

In November 2021, the defendant stopped paying the plaintiff salary and benefits[5] and stopped giving him written wage statements.  (*Id.* ¶ 13.)  The plaintiff notified the defendant that he was owed unpaid wages, but as of June 2023 the defendant had not paid him.  (*Id.* ¶ 14.)  The plaintiff nevertheless continued working for the defendant "in the same capacity" and did work that "required active reauthorization from" the defendant.  (*Id.* ¶ 14–15.)  The plaintiff "continued devoting his full business time, attention, skill, and efforts to the Company," including "managing the SEC Disclosure System Authorization," "reviewing company

---

[5] When the plaintiff was being paid, he received $484.59 a month for health insurance and $1049.36 for life insurance; when the defendant stopped payments, the plaintiff had to pay for these benefits or let the policies expire.  (ECF No. 29 ¶ 16.)

4

disclosures," "maintaining the stock exchange system for listed companies," "administrating shareholders' meetings," "supervising shareholder information in the stock bank manager system," and "maintaining the company in good standing." (*Id.* ¶ 15.) The plaintiff maintains that he "continu[ed] to work for [the defendant] . . . by oral agreement" and that the parties "did not expressly agree on whether the continuation was governed by the same written Employment Agreement." (*Id.* ¶ 14.)

## II. Procedural History

On July 27, 2023, the plaintiff brought this action claiming breach of contract and unjust enrichment. (ECF No. 1.)[6] On July 29, 2024, the Court granted the defendant's motion to dismiss the second amended complaint, but granted the plaintiff leave to amend his complaint. (ECF No. 24.) On August 26, 2024, the plaintiff filed a third amended complaint (ECF No. 26), and on November 13, 2024, the plaintiff filed a fourth amended complaint. (ECF No. 29.)[7] The defendant moves to dismiss the fourth amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 36.)

## LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed

---

[6] The plaintiff filed an amended complaint on October 11, 2023 (ECF No. 8), and a second amended complaint on October 13, 2023. (ECF No. 12.)

[7] The parties refer to this as the "Third Amended Complaint," but this is the plaintiff's fourth amended complaint.

factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

Both parties submitted exhibits in support of their respective positions. In deciding the defendant's motion to dismiss, the Court considers the exhibits the plaintiff includes with his fourth amended complaint. *See McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) ("[I]n deciding a motion under Rule 12(b)(6), the Court must consider the Amended Complaint's allegations along with any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (citation omitted)). The Court also considers exhibits 1, 2, 3, and 6 to the defendant's motion; exhibit 1 is a copy of the plaintiff's fourth amended complaint, exhibit 2 is a copy of the Court's order granting the defendant's prior motion to dismiss, exhibit 3 is a copy of the plaintiff's exhibit A, and exhibit 6 partially overlaps with the plaintiff's exhibit F.

However, the Court does not consider the defendant's exhibits 4 and 5. Exhibit 4 purports to be a notice of resignation from the plaintiff to the defendant. Although in the complaint the plaintiff states that he resigned (ECF No. 29 ¶ 10), he does not he does not say that he did so by any particular means. *See McLennon*, 171 F. Supp. 3d at 88 ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." (citation omitted)); *Id.* at 89 ("[a] document is not integral simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff *relied* on the document in preparing his complaint." (citation omitted) (emphasis in

6

original)). [8] Exhibit 5 is the defendant's Form 10-K for the year ending December 31, 2021. The plaintiff does not cite or refer to this document anywhere in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) ("The Amended Complaint does not refer to the [documents]" and the "plaintiffs apparently did not rely on them in drafting it"). [9]

## DISCUSSION

In his fourth amended complaint, the plaintiff alleges that the defendant owed him salary and benefits pursuant either to the employment agreement or an oral or implied agreement. (ECF No. 29 ¶¶ 10, 14.) The plaintiff also cites the employment agreement as the basis for the defendant's obligation to reimburse certain business expenses, and alleges that the defendant also had an obligation to repay a loan. (*Id.* ¶¶ 23–24, 29.) The defendant argues that it had no obligation under the employment agreement to pay the plaintiff salary and benefits because he resigned. (ECF No. 36-9 ¶ 5.) The defendant also asserts that the plaintiff cannot rely on an alleged oral or implied agreement because there was a written employment agreement. (*Id.* ¶ 6.) In addition, the defendant contends that the plaintiff's claims for "personal loan" and "expenses" should be dismissed because the expenses came from a company account, and the plaintiff did not "present[]" the expenses as required by the employment agreement. (ECF No. 36-9 ¶ 16.)

---

[8] Exhibit 4 is heavily redacted. According to the plaintiff, the defendant has "black[ed] out the entirety of what Plaintiff was objecting to," and the defendant "required [the plaintiff] to continue working" even after the plaintiff sent the message. (ECF No. 38 at 4.) *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) ("Even if a document meets the twin requirements of integrality — reliance and notice — a court still may not consider it on a motion to dismiss if there is a dispute regarding the authenticity or accuracy of the document." (citation omitted)).

[9] In addition to its memorandum of law (ECF No. 36-9), the defendant filed a declaration (ECF No. 36-1) with legal argument that is more appropriate in a memorandum of law. However, the Court will "consider the legal arguments raised there as [it does] a memorandum of law." *Perez v. Manna 2nd Ave. LLC*, No. 15-CIV-4655, 2016 WL 7489040, at *4 (S.D.N.Y. Dec. 28, 2016).

As explained below, the plaintiff has sufficiently alleged breach of contract as to the unpaid wages and benefits and the unpaid loans and expenses, as well as a claim for unjust enrichment.

### I. Breach of Contract Claim

"In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). To plead these elements "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (citation omitted). Under New York law, a court interpreting a contract is "to give effect to the intent of the parties as revealed by the language they chose to use." *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000). "At the motion to dismiss stage, the court resolves any contractual ambiguities in favor of the plaintiff, and if the plaintiff has an arguable claim under the contract, then the claim should not be dismissed." *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 714 (S.D.N.Y. 2022).

A contract is ambiguous if "more than one meaning may reasonably be ascribed to the language used." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (citation omitted). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation . . . unless each is a reasonable interpretation." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citation omitted). Therefore, "the court should not find the contract ambiguous where the interpretation urged by one party would 'strain [] the contract language beyond its reasonable and ordinary meaning.'" *Id.* (quoting *Bethlehem Steel Co. v. Turner*

8

*Constr. Co.*, 2 N.Y.2d 456, 459 (1957)).  In the absence of ambiguity, "words and terms are given their plain and ordinary meaning." *Cassoli v. Am. Med. & Life Ins. Co.*, No. 14-CV-9379, 2015 WL 3490688, at *2 (S.D.N.Y. June 2, 2015).

Under New York law, "an implied contract 'may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct.'" *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 168 (S.D.N.Y. 2024) (quoting *Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*, No. 23-CV-2349, 2023 WL 7529768, at *4 (S.D.N.Y. Nov. 13, 2023)).  "The elements of a breach of implied contract claim are the same as for a traditional breach of contract claim." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 383 (S.D.N.Y. 2024). "A party's conduct indicates assent when he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Wallace v. Health Quest Sys., Inc.*, No. 20-CV-545, 2021 WL 1109727, at *10 (S.D.N.Y. Mar. 23, 2021) (citation omitted).  A breach of implied contract also "requires a showing that there was a 'meeting of the minds.'" *Seren Fashion Art & Interiors*, 2023 WL 7529768, at *4 (citation omitted).  The existence of "an implied contract will ordinarily be a question of fact, as it involves an assessment of the parties' conduct and the extent to which such conduct demonstrates a meeting of the minds." *Wallace*, 2021 WL 1109727, at *10 (quoting *Monahan v. Lewis*, 51 A.D.3d 1308, 1310 (3d Dep't 2008)).

    a. **Wage and Benefits**

        i. **The Employment Agreement**

The plaintiff alleges that the defendant breached the employment agreement by withholding his salary and benefits between November 2021 and June 2023.  (ECF No. 29 ¶¶ 3,

9

13–14.) The defendant contends that the plaintiff does not have a claim pursuant to the employment agreement because he resigned as COO. (ECF No. 36-9 ¶¶ 5, 15.) According to the defendant, the plaintiff's October 18, 2020 resignation — during the additional one-year renewal term that began on June 18, 2020 — serves as "prior notice of non-renewal of the employment agreement" pursuant to Section 2 of the employment agreement; thus, the defendant says, the agreement "died of a natural death" at the end of the renewal term in June 2021. (ECF No. 36-1 ¶ 13.) The plaintiff counters that he continued to serve in the same role even after he resigned. (ECF No. 38 at 6.)[10]

Section 2 of the agreement provides that the agreement "shall be automatically renewed" for additional one-year terms, following an initial one-year term beginning on June 18, 2019, "unless either party gives prior written notice of non-renewal to the other party" at least sixty days before the renewal term ends. (ECF No. 29-1 ¶ 2.) When the plaintiff resigned in October 2020, he was in the first renewal term under the agreement, which was set to renew automatically in June 2021. There is no dispute that the plaintiff resigned more than sixty days before the renewal term ended in June 2021. The question is therefore whether the resignation was a "written notice of non-renewal." The plaintiff does not address the defendant's Section 2 argument. The plaintiff's failure to address this argument in opposition to the defendant's motion to dismiss amounts to a concession. *See Francisco v. Abengoa, S.A.,* 559 F. Supp. 3d 286, 318 n.10 (S.D.N.Y. 2021) ("Numerous courts in this District have held that a party's failure

---

[10] The defendant does not argue that the plaintiff's employment was terminated under Section 5(c). Nevertheless, the plaintiff urges that the defendant is estopped from claiming that the plaintiff was not terminated pursuant to Section 5(c) because of arguments the defendant made in the earlier motion to dismiss. (*See* ECF No. 38 at 5 (citing *Lorenzo v. Kahn*, 100 A.D. 3d, 1480 1483 (judicial estoppel applies where the position taken in one motion is "directly contrary to or inconsistent with" the position taken in the prior motion, and the party asserting it prevailed)).) Regardless of whether Section 5(c) applies, the Court would still need to determine if the resignation was a "non-renewal" under Section 2 of the agreement.

10

to address an issue in its response to a Rule 12(b)(6) motion amounts to a concession or waiver of the argument." (citation omitted)).[11]

### ii. The Implied Agreement

The plaintiff alleges that regardless of the employment agreement, he is entitled to wages and benefits because he and the defendant had an oral or implied agreement.  (ECF No. 29 ¶ 14; ECF No. 38 at 6.)  The defendant says that the plaintiff cannot succeed on that ground because of Section 19 of the employment agreement, which provides that the agreement "constitutes the entire agreement between the parties pertaining to the subject matter hereof, and fully supersedes any and all prior agreements between the parties . . . respecting the Executive's employment" and that "no amendment or modification to this Agreement shall be valid unless set forth in writing and signed by each of the parties."  (ECF No. 29-1 ¶ 19.)  Moreover, the defendant says that the Court cannot consider extrinsic evidence of an implied agreement because of the parol evidence rule.  (ECF No; 36-1 ¶¶ 6, 10; ECF No. 36-9 ¶¶ 7–9.)

These arguments are not persuasive.  The integration clause is not a bar to finding an implied agreement covering the plaintiff's continued employment.  Generally, "[i]ntegration clauses only apply to preclude alleged agreements made prior to the signing of the contract containing the integration clause, not those made subsequent to the written contract." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 412 n.9 (S.D.N.Y. 2011).  The defendant's reliance on the "no amendment or modification…shall be valid" language, (ECF No.

---

[11] Nor does the plaintiff refer to Section 2 in the complaint.  And, as the Court previously held, the plaintiff was hired to be the Chief Operating Officer — Section 3 of his employment agreement, which is titled "Positions and Duties," provides that the plaintiff "shall serve as Chief Operating Officer" — and the employment agreement applied to that position only.  (ECF No. 29-1 ¶ 2; *see also* ECF No. 24 at 10.)  While the plaintiff alleges that he "resigned the title of Chief Operating Officer" (ECF No. 29 ¶ 2), he also says that he "continued his employment with the same responsibilities and the same compensation" and that "the parties did not expressly agree on whether the continuation was governed by the same written Employment Agreement."  (*Id.* ¶¶ 2, 14.)

11

36-1 ¶ 5), is misplaced.  An integration clause "require[s] full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing."  *Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 281 (S.D.N.Y. 2022) (citation omitted).  The plaintiff, however, does not rely on extrinsic evidence to "vary or contradict the terms of the" written agreement.  Rather, the plaintiff alleges that an entirely different, implied agreement governs his continued employment.  (*See* ECF No. 29 ¶ 14 ("continuing to work for [the defendant] was by oral agreement.").)  The plaintiff may plead causes of action based on both an express and an implied contract.  *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 355 (S.D.N.Y. 2012) ("[A]lthough the theories of express contract and of contract implied in fact are mutually exclusive, the federal rules do not require consistency in pleadings, and therefore [Plaintiff] may claim alternatively on an express contract and on an implied contract."  (citation omitted)).

  Moreover, the plaintiff "allege[s] conduct and a course of dealing that raise a strong inference of implied contract."  *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017).  Under New York law, "the parties' conduct after the expiration of a written contract, including a party's continued rendition of services, the other party's acceptance of those services and . . . payment . . . in accordance with the terms of the written contract can establish a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract."  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 365 (S.D.N.Y. 2016), *aff'd,* 850 F. App'x 38 (2d Cir. 2021) (cleaned up).  The plaintiff alleges that after October 2020, he "manag[ed] the SEC Disclosure System Authorization and review[ed] company disclosures; maintain[ed] the stock exchange system for listed companies; administ[ered] shareholders' meetings; supervis[ed] shareholder information in the stock bank

12

manager system; and maintain[ed] the company in good standing." (ECF No. 29 ¶ 15.) He also says that much of this work "required active reauthorization" from the defendant. (*Id.*) The plaintiff submitted an exhibit that shows that he "remained the administrator into 2022." (*Id.*)[12]

In addition, the defendant paid the plaintiff through at least October 2021. The defendant's characterization of these payments as "severance" under Section 7 of the agreement, (ECF No. 36-1 ¶ 14), is inconsistent with the language of the section. Section 7 provides that severance payments would be made for "3 months following the Date of Termination" (ECF No 29-1 ¶ 7(c)), which the defendant says was June 17, 2021, when the agreement assertedly "died of a natural death." (ECF No. 36-1 ¶ 13.) If these really were severance payments, the defendant would have stopped making them on September 17, 2021; the defendant continued paying the plaintiff through the end of October 2021. (ECF No. 29-1 ¶ 3; ECF No. 36-1 ¶ 18.) This conduct suggests a "meeting of the minds" that the plaintiff would continue his work, which "required active reauthorization" from the defendant, and for which the defendant continued to pay the plaintiff. *B.S.D. Cap., Inc.*, 2023 WL 7529768, at *4; *see also Wallace*, 2021 WL 1109727, at *10. Under these circumstances, the plaintiff has stated a claim for breach of an implied contract.

### b. Loans and Expenses

The plaintiff also alleges that the defendant breached the employment agreement because it did not reimburse him for expenses he incurred on the defendant's behalf, and the defendant has not repaid him for a loan that he made in connection with the defendant's acquisition of another company. (ECF No. 29 ¶¶ 22–25.) Dismissing these claims as "threadbare" and

---

[12] The defendant disputes that the plaintiff continued to work after he resigned (*see* ECF No. 36-1 ¶ 19), but the Court cannot resolve this dispute on a motion to dismiss. *Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-CV-4559, 2017 WL 6501864, at *6 (E.D.N.Y. Dec. 19, 2017) ("[R]esolving factual disputes is precisely what this Court cannot do on a motion to dismiss.").

"conclusory," the defendant says that (1) the plaintiff has not alleged "presentment" of his expenses, as required by Section 4(c) of the employment agreement, and (2) the plaintiff's expenses were paid either from a joint account the plaintiff shared with the company or reimbursed from the account.  (ECF No. 36-9 ¶ 16.)

Section 4(c) of the employment agreement provides that "[t]he Company shall reimburse the Executive for all reasonable out-of-pocket travel or other business expenses . . . in connection with the performance of his duties and obligations under this Agreement, subject to the Executive's presentation of itemized vouchers, receipts and documentation."  (ECF No. 29-1 ¶ 4(c).)  The plaintiff alleges that he "personally paid operating expenses for" the defendant.  (ECF No. 29 ¶ 25.)  He asserts that the expenses were "business expense[s]" for the defendant's "benefit" (*id.* ¶ 26), that "paying such expenses…was part of the job duties" (*id.*), and that he "sent Defendant invoices and itemized receipts" for the expenses.  (*Id.* ¶ 27.)  The plaintiff states a claim for breach of Section 4(c) of the employment agreement — in particular, failing to reimburse him for certain business expenses.  The defendant's factual dispute about the bank account from which the expenses were paid does not defeat the plaintiff's claim at this stage. *See Henry Avocado Corp.*, 2017 WL 6501864, at *6 ("[R]esolving factual disputes is precisely what this Court cannot do on a motion to dismiss.").

The plaintiff also alleges that he "personally loaned $140,000" so that the defendant could acquire Fast Approach.  (ECF No. 29 ¶ 23.)  He alleges that the defendant's shareholders could not pay the full price so he loaned the defendant the difference, for which Fast Approach was supposed to reimburse him; as part the acquisition, however, the defendant acquired Fast Approach's liabilities.  (*Id.* ¶¶ 23–24.)  The plaintiff does not allege that the loan was a "business expense" subject to reimbursement under Section 4(c) of the agreement.  Rather, he seems to

14

claim that an implied contract entitles him to reimbursement. The plaintiff maintains that the loan was "necessary" for the defendant to acquire Fast Approach, that the plaintiff made the loan "in reliance" on the defendant's Chairman and CEO promise of shares worth approximately 10 million yuan and "based on a reasonable belief that Defendant would perform." (*Id.* ¶ 24.) He asserts that Fast Approach confirmed the loan and attaches confirmation of the debt to the complaint, but says that he has not been repaid either in stock or cash. (*Id.* ¶¶ 23–24.)

These claims are sufficient to plead breach of an implied contract. The plaintiff has described the circumstances under which the implied contract came into existence — that the defendant promised to give the plaintiff shares in exchange for the loan. He also alleges that he performed his end of the agreement, as evidenced by the confirmation of the loan from Fast Approach, and that the defendant did not fulfill its part of the agreement. These allegations "give[] rise to a plausible inference that the parties mutually agreed" that the plaintiff would receive shares in exchange for the loan. *See In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d at 384.

## II.     Unjust Enrichment

The plaintiff alleges that there is a dispute about whether the employment agreement covers the defendant's failure to compensate the plaintiff, and that he can seek "recovery in the alternative for quasi-contract damages" because the defendant was "unjustly enriched" at the plaintiff's expense. (ECF No. 29 ¶¶ 32–33.) The defendant denies that there is dispute about the employment agreement, which they say covers the plaintiff's claims, and therefore the unjust enrichment claim must be dismissed. (ECF No. 36-9 ¶¶ 9–12; ECF No. 36-1 ¶ 16.)

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be

15

inequitable to permit the defendant to retain that which is claimed by the plaintiff." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (2007)). "A cause of action for unjust enrichment sounds in quasi-contract and cannot lie where an enforceable contract governs the disputed matter." *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014). However, "[w]here there is a bona fide dispute regarding the existence of a contract . . . both an unjust enrichment and a breach of contract claim may be pled." *Id.; see also Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 45 n.12 (S.D.N.Y. 2023) (distinguishing cases where unjust enrichment claims were not duplicative because they "rested on disputed facts as to whether there was any contract at all"); Fed.R.Civ.P. 8(e)(2) (permitting alternative pleading).

In dismissing the second amended complaint, the Court found that the plaintiff's unjust enrichment claim was duplicative of the breach of contract claim, based on the employment agreement, because it "relies on the same factual allegations and the same theory of liability" as the breach of contract claim. (ECF No. 24 at 14–15 (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020)).) But in the fourth amended complaint the plaintiff also alleges that the parties had an oral or implied agreement that governed the plaintiff's continuing employment with the defendant. The defendant disputes that. (*See e.g.* ECF No. 36-1 ¶¶ 5–6.) Under these circumstances, the unjust enrichment claim is not duplicative of its breach of contract claim. Furthermore, the plaintiff alleges that the defendant was "unjustly enriched" when the plaintiff continued to work for the defendant — work that was worth "no lower than $114,407.4 per year" — at the plaintiff's expense; he "worked for years without pay," and "equity and good conscience require that [the defendant's] benefit at [the plaintiff's] expense

16

be corrected." (ECF No. 29 ¶¶ 32–33.)  Accordingly, the plaintiff states a claim for unjust enrichment.

## CONCLUSION

For these reasons, the motion to dismiss is denied.

**SO ORDERED.**

　　　　　　s/Ann M. Donnelly　　　　　　
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
　　　 July 21, 2025