UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAQI CUI,

Plaintiff,

-against-

PLANET GREEN HOLDINGS, INC.,

Defendant.

**ORDER**

23 Civ. 5683 (AMD) (VMS)

**Vera M. Scanlon, United States Chief Magistrate Judge:**

Plaintiff Daqi Cui ("Plaintiff") brings this action asserting breach of contract and unjust enrichment claims against his former employer, Defendant Planet Green Holdings ("Defendant"). See ECF No. 29 at 1. Plaintiff alleges Defendant did not pay him wages and benefits as required by either their employment agreement or an implied agreement, reimburse Plaintiff for his employment-related expenses or repay loans that Plaintiff made to Defendant. Id. at 8-9. Now pending before the Court are three motions: (1) Plaintiff's motion to compel discovery responses and for sanctions, see ECF No. 46; (2) Plaintiff's motion for a default judgment and for sanctions, see ECF No. 48; and (3) Plaintiff's motion to compel adequate responses to interrogatories and document requests, see ECF No. 53. Following the Court's instruction, Plaintiff filed an updated brief identifying outstanding discovery disputes and Defendant filed a response thereto. See ECF Nos. 56-57. Plaintiff's motions to compel are denied but a discovery schedule as to these issues is set as detailed herein. Plaintiff's motions for a default judgment and for sanctions are denied.

# I. BACKGROUND

## a. Factual Background

The following facts are derived from Plaintiff's fourth amended complaint. See ECF No. 29. In June 2019, Plaintiff joined Defendant as Chief Operating Officer ("COO") at an annual base salary of $96,000. Id. ¶ 9. Plaintiff's employment agreement stated that he would "have such duties and responsibilities commensurate with" the COO position and "devote his full business time, attention, skill and efforts to the business and affairs of the Company." See ECF No. 29-1 ¶ 3. The agreement was for an initial one-year term beginning on June 18, 2019, and subject to automatic renewal for additional one-year terms "unless either party gives prior written notice of non-renewal to the other party" at least sixty days before the termination of the initial term or renewal term. Id. ¶ 2. Under Section 4(b) of the agreement, which covered benefits, Plaintiff was "entitled to participate in all compensation and employee benefits plans . . . available to all employees of the Company." Id. ¶ 4(b). Section 4(c) of the agreement, which addressed business-related expenses, stated:

> the Company shall reimburse the Executive for all reasonable out of-pocket travel or other business expenses actually incurred or paid by the Executive in connection with the performance of his duties and obligations under this Agreement, subject to the Executive's presentation of itemized vouchers, receipts and documentation and consistent with the reimbursement policies and procedures as the Company may, from time to time, establish for senior officers.

Id. ¶ 4(c). Section 19 of the agreement included an integration clause providing that the agreement "constitutes the entire agreement between the parties pertaining to the subject matter hereof, and fully supersedes any and all prior agreements between the parties hereto respecting the Executive's employment," and that "no amendment or modification to this Agreement shall be valid unless set forth in writing and signed by each of the parties." Id. ¶ 19.

During the course of his employment, Plaintiff loaned the company "substantial sums of money." See ECF No. 29 ¶ 22. In June 2020, the Chief Technology Officer of Fast Approach, a company that Defendant has since acquired, confirmed via email that Fast Approach borrowed $140,000 from Plaintiff and that "Fast Approach promises to repay this principal amount." Id. ¶ 23; ECF No. 29-4 at 2. Plaintiff made a personal loan because Defendant's shareholders could not afford the full purchase price for Fast Approach. See ECF No. 29 ¶ 24. In exchange for the loan, Defendant's Chairman and CEO promised to give Plaintiff 3.5 million shares, valued at approximately 10 million yuan. Id. Plaintiff alleges that Defendant has not given him the shares, and that the loan has not been repaid. Id. In addition, Plaintiff says that he paid certain operating expenses for Defendant, including: (1) $40,000 to Defendant's attorney for merger and acquisition services on July 12, 2020; (2) a $46,000 New York Stock Exchange issuance fee on October 2, 2020; (3) $15,000 to Defendant's Canadian branch on October 8, 2020; (4) $20,000 for an attorney on October 30, 2020; (5) $3,818.21 in Canadian legal fees in October 2020; (6) $1,000 for Canadian employee wages in October 2020; and (7) $20,000 to Defendant's Canadian branch on September 1, 2021. Id. ¶ 25. Plaintiff asserts that "paying such expenses and later being reimbursed" was one of his responsibilities as COO, in part because Defendant did not maintain an American bank account. Id. ¶ 26. Plaintiff says that Defendant reimbursed similar expenses, but it did not reimburse the above expenses, even though Plaintiff sent Defendant invoices and itemized receipts. Id. ¶¶ 26–27; see also ECF No. 29-6.

In October 2020, Plaintiff was injured in a vehicle crash during work-related travel. See ECF No. 29 ¶ 10. Plaintiff "resigned the COO title for health reasons," but he continued "performing substantially similar duties for the same compensation." Id. Defendant disclosed Plaintiff's resignation on its annual Form 10-K filed with the U.S. Securities and Exchange

Commission in March 2021 for the fiscal year ending December 31, 2020. Id. ¶ 11; see ECF No. 29-2 at 26. The disclosure stated that Plaintiff resigned as CEO "due to his personal health reason" and "continued to be employed by the Company." ECF No. 29-2 at 26. Plaintiff "remained the Company's only Executive located in the United States and speaking English," and "remained responsible for stock exchange and governmental filings." See ECF No. 29 ¶ 10. Defendant did not complain about his job performance, "either before or after his change in title." Id. ¶ 12. In November 2021, Defendant stopped paying Plaintiff's salary and benefits, and it stopped giving him written wage statements. Id. ¶ 13. Plaintiff continued working for Defendant in the same capacity and notified Defendant that he was owed unpaid wages, but as of June 2023, Defendant had not paid Plaintiff for nineteen months. Id. ¶ 14. Plaintiff claims that he "continued devoting his full business time, attention, skill, and efforts to the Company," including "managing the SEC Disclosure System Authorization," "reviewing company disclosures," "maintaining the stock exchange system for listed companies," and "administrating shareholders' meetings." Id. ¶ 15.

**b. Procedural History**

On July 27, 2023, Plaintiff initiated this action. See ECF No. 1. Plaintiff filed an amended complaint on October 11, 2023, and a second amended complaint on October 13, 2023. See ECF Nos. 8, 12. On July 29, 2024, the District Court granted Defendant's motion to dismiss the second amended complaint, but it granted Plaintiff leave to amend. See ECF No. 24. On August 26, 2024, Plaintiff filed a third amended complaint, and on November 13, 2024, Plaintiff filed a fourth amended complaint. See ECF Nos. 26, 29. On July 21, 2025, the District Court denied Defendant's motion to dismiss the fourth amended complaint. See ECF Nos. 36, 40. On July 31, 2025, Defendant filed an answer and counterclaim. See ECF No. 42. The undersigned

held status conferences with counsel for the parties on March 31, 2026; April 15, 2026; and July 1, 2026, during which the Court addressed the pending motions at ECF Nos. 46, 48 and 53. See 3/31/2026, 4/15/2026, 7/1/2026 Orders.

## II. DISCOVERY DISPUTES

After the last conference, the Court ordered Plaintiff to "file the disputed interrogatories and document requests with a brief cover letter of explanation for the Court as to what remains outstanding" and Defendant to "file Defendant's responses thereto, also with a brief cover letter of explanation as to whether any documents have been withheld." See 7/7/2026 Order. The Court focuses its review on this briefing. See ECF Nos. 56-57.

Plaintiff did not follow the Court's instructions, instead filing a fifteen-page reply that expands on many of Plaintiff's arguments in his earlier motions, without providing a clear list of the disputed interrogatories and document requests. See ECF No. 56. Plaintiff generally argues that Defendant's responses are deficient because Defendant has failed to produce its "corporate bank statements, internal communications, accounting records, or any documents actually within Defendant's possession, custody, or control." Id. at 1. In addition, Plaintiff contends that Defendant's interrogatory responses are "internally contradictory, factually incomplete, and directly contradicted by the documentary evidence." Id. Plaintiff asks the Court to grant the motion to compel and order Defendant to provide complete, verified supplemental discovery responses including production of Defendant's corporate bank statements and accounting records. Id. at 2. In a brief response, Defendant notes that it attached a supplemental production of documents to Plaintiff and "made additional search[es] for relevant responsive documents which are also incorporated in the attached appendix." See ECF No. 57. Defendant does not address whether any documents have been withheld or whether the searches are complete. Id.

The Court has examined the documents[1] produced by Defendant. See generally ECF No. 57. Defendant produced account summaries for a Bank of America ("BOA") account ending in 6093 for the following time periods: (1) December 25, 2019, to January 27, 2020; (2) January 28, 2020, to February 24, 2020; (3) March 26, 2020, to April 24, 2020; (4) April 25, 2020, to May 22, 2020; (5) May 23, 2020, to June 24, 2020; (6) June 25, 2020, to July 27, 2020; (7) July 28, 2020, to August 25, 2020; (8) August 26, 2020, to September 24, 2020; (9) September 25, 2020, to October 26, 2020; (10) October 27, 2020, to November 23, 2020; and (11) November 24, 2020, to December 24, 2020. See ECF No. 57-1 at 14-17; 57-13 at 1-23.[2] These statements list Plaintiff Daqi Cui and Dengrong Zhou as the account holders. Id. Defendant produced a photo of a $20,000 transfer dated September 1, 2020, from Daqi Cui to Fast Approach Inc., for the BOA account ending in 6093. See ECF No. 57-2 at 18. Defendant produced a photo of a BOA online banking portal showing "transfer activity" from October to December 2020, for the BOA account ending in 6093. See ECF No. 57-2 at 26. Defendant produced various other financial documents including documents from EastWest Bank [ECF No. 57-1 at 3-9], a photo of a $36,000 transfer to Chase Bank dated October 2, 2020 [ECF No. 57-2 at 12], a photo showing various money transfers between November 2019 and September 2020 [ECF No. 57-2 at 22], and a photo of an email showing a $8,000 wire transfer dated October 12, 2021 [ECF No. 57-4].

The parties' descriptions of their disputes are imprecise. Plaintiff says that "Defendant has produced only Plaintiff's own bank statements—documents already in Plaintiff's possession." See ECF No. 56 at 1. Plaintiff maintains that Defendant's corporate bank

[1] Many of the documents are in Chinese, and, therefore, the Court is unable to understand them or their relevance. See generally ECF No. 57.

[2] The account summary for the period from February 25, 2020, to March 25, 2020, appears to be missing. See ECF No. 57-13 at 1-23.

statements showing deposits, withdrawals and transfers from Defendant's own corporate accounts are missing. Id. at 2. Defendant contends that the Bank of America statements demonstrate that funds were from Defendant's account "and maintained in the names of Daqi Cui as Company COO and Dengrong Zhou, a Company manager." See ECF No. 55 at 1. Plaintiff says that this was not a business account, and that the account belonged solely to Plaintiff. See ECF No. 56 at 2. Plaintiff explains that the other joint account holder "was neither a corporate manager nor an employee of the Company," but rather "an unrelated third party and Plaintiff's personal debtor." Id. Plaintiff emphasizes that Defendant has re-produced documents Plaintiff already possesses. Id. at 4-5.

The Federal Rules of Civil Procedure provide that a party may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Moreover, a party is entitled to request records in any other party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Without the benefit of a list of the disputed interrogatories and document requests, which Plaintiff was ordered to produce, it is difficult for the Court to ascertain specific deficiencies in Defendant's productions. Defendant's productions appear to be re-productions of documents that were previously produced by Plaintiff or were already in Plaintiff's possession, custody or control. Aside from a single statement that "[D]efendant has made additional search for relevant responsive documents," Defendant has not shown that it has acted diligently in searching for and turning over responsive discovery. See ECF No. 57 at 1. The Court cannot grant relief on this record. Nonetheless, in order to move discovery forward, the Court orders that on or before December 23, 2026, Defendant must produce the following:

- Corporate bank statements showing deposits, withdrawals and transfers from Defendant's own corporate bank accounts during the period from January 1, 2019, through December 31, 2021;
- Accounting records for the transactions identified in the fourth amended complaint, see ECF No. 29 ¶ 25, including amount, date, method, source and destination accounts, stated purpose and Defendant's characterization;
- Internal communications among Defendant's officers, employees, and Board members regarding Plaintiff's work, compensation, benefits, termination and/or the financial transactions identified in the fourth amended complaint;
- Board minutes and corporate governance materials addressing Plaintiff's employment, compensation, benefits, termination and/or the financial transactions identified in the fourth amended complaint;
- Wire transfer instructions, payment authorizations and reimbursement requests as to the financial transactions identified in the fourth amended complaint;
- Communications with third parties such as Fast Approach Inc. regarding the loans or transfers documented in the Bank of America statements relating to Plaintiff;
- Accounting policies, procedures and internal controls governing how Defendant classified and recorded the financial transactions identified in the fourth amended complaint;
- The names and addresses of financial institutions at which Defendant maintained accounts during Plaintiff's employment;
- A detailed privilege log for any documents withheld;
- Verified supplemental responses to Plaintiff's first set of interrogatories.

## III. SANCTIONS

In the pending motions, Plaintiff seeks sanctions multiple times. See ECF Nos. 46, 48, 53. First, Plaintiff requests "sanctions precluding Defendant from presenting any defense in this case." See ECF No. 46 at 1. Plaintiff contends this sanction is warranted due to Defendant's counsel's "pattern of conduct demonstrat[ing] bad faith and willful disregard for discovery obligations." Id. at 4. Second, Plaintiff seeks a default judgment to "deter further noncompliance and permit this case to proceed." See ECF No. 48 at 6. If the Court determines a default judgment is not appropriate, Plaintiff requests that the Court impose alternative sanctions such as striking Defendant's answer, preclusion of evidence and the imposition of monetary sanctions and attorneys' fees. Id. at 13-14. Third, Plaintiff argues Defendant's position is not substantially justified and that "an award of Plaintiff's reasonable expenses" is warranted pursuant to Rule 37(a)(5)(A). See ECF No. 53 at 17-18.

The Court ordered Defendant to respond to the sanctions portions of Plaintiff's motions. See 6/11/2026 Order. Defendant submitted an affirmation of corporate representative Wenbin Wu. See ECF No. 55. Mr. Wu contends that Plaintiff has engaged in "improper shifting the burden of proof to the Defendant given that Defendant has produced over 115 pages of documents which Plaintiff's admitted in its motion, including the Bank of America[] account statements that Plaintiff based his motion upon." Id. at 1. Mr. Wu asserts that "Plaintiff's allegation of loans to the Company should be the Plaintiff's burden to demonstrate," and "[t]hese alleged loans should be in Plaintiff's possession." Id. at 2. Mr. Wu further asserts that "[i]f Plaintiff is alleging that he continued to work for the Company after his resignation, then it is Plaintiff's burden to prove that he continued working for the Company as these are Plaintiff's allegations." Id. In closing, Mr. Wu reiterates that Plaintiff's motions to compel are nothing

more than improper burden shifting, and that Defendant "produced documents that demonstrated where the funds came from and answered Plaintiff's interrogatories accurately." Id. at 3. Defendant's analysis is misplaced. Plaintiff's requests do not seek to shift any burden of proof but rather seek to explore Defendant's defenses and locate support for Plaintiff's allegations. Defendant confuses the burdens of proof and of production, and Defendant does not explain its seeming deficiencies in production.

Under Rule 37(a)(5)(A), when a party provides discovery in response to a motion to compel discovery, the Court must "require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," Fed. R. Civ. P. 37(a)(5)(A), unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iIi). In evaluating whether to impose more serious discovery sanctions, courts consider the following non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (internal quotations & citations omitted).

As Plaintiff's motions were not successful, sanctions should not be awarded under Rule 37. In addition, the Court has not issued a final discovery order to date on the issues reviewed herein, discovery remains open and the Court has not set a deadline for dispositive motion practice or trial. See generally Docket. Plaintiff's requests for a default judgment, preclusion of

evidence and striking of the answer, among other things, would be unduly harsh considering these circumstances. Moreover, when the Court held a conference on the discovery issues, it instructed the parties to submit supplemental materials in a useable form consistent with the Local Rules. Neither party complied properly, requiring the Court to examine the record extensively to address these disputes. As neither party complied in a manner helpful to the resolution, sanctions would be especially inappropriate. Although the Court is concerned by Plaintiff's characterization that Defendant's discovery responses have been repeatedly deficient, the Court cannot make this assessment because of the failings in the parties' submissions. The Court denies Plaintiff's requested sanctions because an award of expenses would be unjust on this record. See Fed. R. Civ. P. 37(a)(5)(A)(iii).

## IV. SCHEDULE

The parties are ordered to complete all fact discovery by February 5, 2027, including any depositions. By the same date, the parties must file a joint letter confirming the completion of fact discovery. Expert discovery will proceed as follows:

- Opening expert designations: February 5, 2027
- Opening expert reports: March 3, 2027
- Rebuttal expert reports: April 2, 2027
- Close of expert discovery: May 3, 2027.

By May 5, 2027, the parties must file a joint letter confirming the close of all discovery. By June 2, 2027, counsel must commence motion practice consistent with the District Judge's Individual Rules. Given the delays in discovery and age of the case, counsel should not expect that extensions of these deadlines will be granted absent good cause and due diligence.

The parties are encouraged to pursue mediation through the Court-annexed mediation program. The parties may request such a referral to the Court-annexed mediation program at any time by filing a joint request on ECF. To facilitate settlement discussions, the Court orders Plaintiff to provide a settlement demand to Defendant by December 11, 2026, and Defendant to respond, taking into account the counterclaim, by January 8, 2027.

Counsel are reminded that they must make a good faith effort, pursuant to the Federal and Local Civil Rules, to resolve disputes before making a motion.

Dated: Brooklyn, New York
November 20, 2026

*Vera M. Scanlon*

VERA M. SCANLON
United States Magistrate Judge